**CONTINENTAL CASUALTY COMPANY, Plaintiff-Counter-Defendant-Appellee,**

v.

**ROBSAC INDUSTRIES, Defendant-Counter-Claimant-Appellant.**

No. 89–55621.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 13, 1990.

Decided Oct. 25, 1991.

Jonathan B. Cole, Brian H. Krikorian, Nemecek & Cole, Sherman Oaks, Cal., for defendant-counter-claimant-appellant.

Richard R. Winter, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, Ill., Robert F. Keehn, Booth, Mitchel & Strange, Los Angeles, Cal., for plaintiff-counter-defendant-appellee.

---

Before REINHARDT, HALL and LEAVY,* Circuit Judges.

REINHARDT, Circuit Judge:

Defendant Robsac Industries ("Robsac") appeals the district court's entry of summary judgment for Continental Casualty Company ("Continental") on Continental's action for declaratory relief and its summary denial of Robsac's motion to stay the declaratory relief action pending the outcome of a parallel state court proceeding on the merits. This case raises the oft recurring problem of the proper role of the federal courts in the resolution of disputes relating to obligations under insurance policies, an area primarily within the jurisdiction of the state courts. We hold that in light of the pending state action the district court should not have exercised its jurisdiction to grant declaratory relief. Accordingly, we reverse and remand to the district court with instructions to dismiss the action.

## FACTS AND PROCEEDINGS BELOW

Robsac is a California corporation. Prior to January, 1987, when it filed a bankruptcy petition, Robsac was in the business of selling artist and drafting supplies through its stores in several cities throughout the United States. In December, 1984, Continental, an Illinois corporation, issued an insurance policy to Robsac along with five other named subsidiaries. In September, 1986, Robert Sachs, the president of Robsac, contacted Robsac's insurance agent and advised him of a potential theft loss. As instructed by the agent, Robsac hired a private investigator to investigate the theft-loss claim. Robsac submitted an official "Proof of Loss" form to Continental on June 17, 1987. On November 25, 1987, Continental denied the claim in a letter to Robsac. Robsac filed suit against Continental for breach of contract in Los Angeles Superior Court on December 2, 1987. In addition to Continental, Robsac also named as defendants 50 Continental mana-

---

* This case was originally heard by Judge Reinhardt, Judge Hall, and the Honorable Edward D. Re, Chief Judge, United States Court of Inter-national Trade. Judge Leavy was substituted for Judge Re upon the latter's retirement from the bench.

gerial level employees, designated as "Does 1 through 50." The parties agree that some of those employees work and reside in California. Almost a month later, on December 28, 1987, Continental filed this declaratory judgment action in the United States District Court for the Eastern District of Illinois. Continental sought a declaratory judgment that it was not liable under the policy. The sole basis for federal subject matter jurisdiction was diversity of citizenship, 28 U.S.C. § 1332. On June 1, 1988, Robsac moved for a stay of the federal action, or in the alternative, a transfer to the Central District of California. The alternative motion was granted and the case transferred.

On March 7, 1989, Robsac again moved to stay the federal action based upon the pendency of the state action, this time making its motion before the United States District Court for the Central District of California. The parties agree that the district court summarily denied the motion on April 3, 1989, although nothing in the record indicates that an order was ever entered reflecting this decision. Continental then moved for summary judgment on June 6, 1988. Continental argued that Robsac had assigned its entire interest in the claim to a third party or had waived any remaining interest, and that in any event Robsac had not introduced any admissible evidence to prove its alleged theft loss.

On April 28, 1989 the district court heard the motion and entered judgment in favor of Continental and against Robsac on the basis of the assignment/waiver issue. The court did not reach the underlying question whether Continental was liable (to Robsac or an assignee) under the policy. Robsac made an untimely motion for new trial or in the alternative, for reconsideration, which the court denied.[1]

Robsac filed a timely appeal of the grant of Continental's summary judgment motion. We have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

■ Robsac argues that the district court abused its discretion by granting declaratory relief during the pendency of the state court proceedings. Robsac relies principally on *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), which set forth a total of six factors to which district courts generally should look in deciding whether to stay federal proceedings in favor of pending state court proceedings concerning the same subject matter. However, we recently held that "[t]he *Colorado River* test ... does not apply where the Declaratory Judgments Act, 28 U.S.C. § 2201, is involved." *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1366 (9th Cir.1991). Accordingly, the district court did not err in failing to abstain under the *Colorado River* doctrine.

■ Nonetheless, in light of Robsac's stay request, abstention is required under a different but related doctrine—the one applicable to declaratory relief cases. This doctrine was first set forth in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). It stems from the fact that by its express terms the Declaratory Judgments Act makes the granting of declaratory relief discretionary. 28 U.S.C. § 2201(a) ("any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration") (emphasis added). At the time that Robsac moved for a stay our cases could have been read to imply that abstention under *Colorado River* and abstention pursuant to the terms of the Declaratory Judgments Act are governed by the same standards. *Compare Transamerica Occidental Life Ins. Co. v. Digregorio*, 811 F.2d 1249, 1254 (9th Cir.1987) *with Mobil Oil Corp. v. City of Long*

---

**1.** The denial of the untimely motion for reconsideration is not at issue on this appeal. We agree with the district court that there was no

basis for Robsac's motion for new trial, as there was no trial in the court below.

*Beach,* 772 F.2d 534, 542 (9th Cir.1985). We have recently made clear, however, that this is not the case. *See Chamberlain,* 931 F.2d at 1366 n. 1. In *Chamberlain,* we narrowed considerably the discretion courts have to issue declaratory relief. We held that quite apart from any considerations under *Colorado River,* a district court's discretion to grant relief under the Declaratory Judgments Act ordinarily should not be exercised "where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* at 1366 (quoting *Brillhart,* 316 U.S. at 495, 62 S.Ct. at 1176).[2]

■ The record does not indicate why the district court decided to exercise its jurisdiction. However, this does not prevent us from considering the issue, because "[w]e review de novo the district court's decision to exercise its jurisdiction under the Declaratory Judgments Act when a state action is pending." *Chamberlain,* 931 F.2d at 1366 (citing *Fireman's Fund Ins. Co. v. Ignacio,* 860 F.2d 353, 354 (9th Cir.1988) (per curiam)). We may conduct that review now or remand and delay doing so until after another appeal is taken. *See Allstate Ins. Co. v. Mercier,* 913 F.2d 273, 277 (6th Cir.1990). Whether we retain jurisdiction and proceed to decide the issue before us or whether we remand to the district court and defer our decision until later, we will still ultimately be obligated to exercise our own discretion in considering the propriety of the district court's grant or denial of declaratory relief.[3] Given the importance of the issue raised in this case and the delay already incurred by the parties,

we elect to review the district court's exercise of jurisdiction now.

In considering the issue ourselves, we are guided by the same criteria and factors as guide the district court in its exercise of jurisdiction. *See* note 3 *supra.* We thus put ourselves in the same position as a district judge and determine whether, in the exercise of our discretion, the assumption of jurisdiction over this declaratory judgment action was proper. *See United States v. State of Washington,* 759 F.2d 1353, 1356–57 (9th Cir.1985) (en banc) (per curiam) ("The court of appeals must exercise its own sound discretion to determine the propriety of the district court's grant or denial of declaratory relief.").

■ In resolving this appeal, we must apply the legal principles applicable at the time we consider the issue. *See id.* at 1357 (setting forth principles with respect to previously unsettled question governing the standards for exercising discretion to grant declaratory relief, and reversing the district court's grant of such relief on that basis). Accordingly, having elected to decide the question before us, we must now determine whether, under *Chamberlain,* Continental's declaratory relief action should be dismissed in deference to the pending state court proceeding. If it should be, then we are obligated to reverse, even if the law did not clearly establish that abstention was required at the time that the district court considered the question.

■ As we stated in *Chamberlain,* when a state court action is pending presenting the same issue of state law as is presented in a federal declaratory suit, "there exists a presumption that the entire suit should be

---

**2.** Given our statement in *Mobil Oil* that the statutory discretion to grant declaratory relief "must be exercised within the narrow boundaries drawn by *Colorado River*" when "denial of relief is based on principles of 'wise judicial administration,'" 772 F.2d at 542 (quoting *Moses H. Cone,* 460 U.S. at 19, 103 S.Ct. at 939), we cannot fault Robsac for failing to rely on *Brillhart* as a separate basis for abstention. Although we stated in *Digregorio* that *Mobil Oil* "must be applied circumspectly," 811 F.2d at 1254, it was not until our decision in *Chamberlain* that we expressly decided that the *Colorado River* principles are entirely inapplicable to

suits brought under the Declaratory Judgments Act.

**3.** As the Sixth Circuit stated in *Allstate:*

These same criteria and factors provide the basis for a district court's exercise of its discretion. When the record contains no indication that the district court considered these criteria and factors, this court has the option either to apply them on appeal or to remand to the district court for this exercise. *Id.* at 277 (citations omitted).

heard in state court." *Chamberlain,* 931 F.2d at 1366–67 (citing *Brillhart,* 316 U.S. at 495, 62 S.Ct. at 1176). We also noted in *Chamberlain* that the Supreme Court's decision in *Brillhart* was based on three principal rationales. "First, the Court wanted to avoid having federal courts needlessly determine issues of state law." *Chamberlain,* 931 F.2d at 1367. Second, the Court wished to discourage litigants from filing declaratory judgment actions as a means of forum shopping. *Id.* Third, the Court relied upon a policy of avoiding duplicative litigation. *Id.* We consider these factors in turn.

First, it is clear that the federal court could have avoided a needless determination of state law by not exercising its jurisdiction. The precise state law issues at stake in the present case are the subject of a parallel proceeding in state court. In the federal case, a diversity action, California law provides the rule of decision for all of the substantive questions. Moreover, this case involves insurance law, an area that Congress has expressly left to the states through the McCarran–Ferguson Act. 15 U.S.C. §§ 1011–12 (1988). Although this case does not involve *Burford* abstention, *see Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), it is worth noting that the *Burford* abstention doctrine's concern "with protecting complex state administrative processes from undue federal interference," *New Orleans Public Serv. v. Council of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989), is also implicated here, where California has established a complex scheme of insurance regulation.

Indeed, we upheld a stay in another declaratory judgment case principally on the basis that there was no compelling federal interest. *See Digregorio,* 811 F.2d at 1255. Yet in that case there was federal question jurisdiction under the Employee Retire-

ment Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, suggesting a Congressional recognition of some federal interest in the case. Where, as in the case before us, the sole basis of jurisdiction is diversity of citizenship, the federal interest is at its nadir. Thus, the *Brillhart* policy of avoiding unnecessary declarations of state law is especially strong here.

We next turn to the second *Brillhart* factor—the interest in avoiding the use by litigants of declaratory judgment actions as a means of forum shopping. *See Chamberlain,* 931 F.2d at 1367. We have also described this factor as relating to "the 'defensive' or 'reactive' nature of a federal declaratory judgment suit," and stated that if a declaratory judgment suit is defensive or reactive, that would justify a court's decision not to exercise jurisdiction. *Digregorio,* 811 F.2d at 1254 n. 4.

The present suit was filed in federal court because the insurer apparently perceived a tactical advantage from litigating in a federal forum. Disputes in which insurance companies have sought declaratory relief in federal court have arisen frequently in the past. Often an insurer has brought a declaratory judgment action in federal court against its insured in order to obtain a ruling as to its obligations in relation to a state court action by a third party against the insured. Although the insurer would have been unable to remove the state court action to federal court in most cases due to lack of complete diversity under 28 U.S.C. § 1441(b), there was diversity jurisdiction in the suit for declaratory relief because the insurer and insured were citizens of different states.[4] However, we have stated that the ripeness requirement of Article III's "case or controversy" clause precludes the insurer's obtaining a declaratory judgment with respect to its *liability* to the insured in such cases be-

---

**4.** There will generally be diversity jurisdiction in a suit by an insurer against its insured because most major insurance companies do business nationally, but for purposes of the diversity statute, are "citizens" of only two states—the state of incorporation and the state in which the company has its "principal place of business." 28 U.S.C. § 1332(c)(1). Thus, there will be di-

versity jurisdiction in a suit between a typical insurance company and its insureds who are domiciled in any of 48 states. However, diversity jurisdiction will usually be defeated if the third party who brought suit against the insured is part of the action because the kinds of occurrences that give rise to liability suits generally involve citizens of the same state.

cause "the federal relief sought may hinge upon the outcome of state court actions." *Ticor Title Ins. Co. of Cal. v. American Resources, Ltd.*, 859 F.2d 772, 777 n. 7 (9th Cir.1988). In light of *Chamberlain,* the result may well be the same with respect to a determination as to the insurer's duty to *defend.* Although the Sixth Circuit has recently held that district courts should dismiss such cases, *see Allstate Ins. Co. v. Mercier,* 913 F.2d 273 (6th Cir.1990), we have not yet addressed the question, *see Ticor Title Ins. Co.,* 859 F.2d at 773–74.

While the present case does not involve an underlying state court action by a third party, it raises closely related concerns. Here, the insured Robsac (a California citizen) sued its insurer Continental (an Illinois citizen) in state court, and as part of the same action also sued other defendants (some of whom are citizens of California). The case could not have been removed to federal court because there was not complete diversity. *See* 28 U.S.C. § 1441(b) and (c).[5] As a result, in an effort to obtain a federal forum, the insurance carrier brought an action seeking a declaration that it was not liable for any coverage under the policy.

A declaratory judgment action by an insurance company against its insured during the pendency of a non-removable state court action presenting the same issues of state law is an archetype of what we have termed "reactive" litigation. *Digregorio,* 811 F.2d at 1254 n. 4. Continental argues, however, that because it intended to file its federal suit for declaratory relief even before Robsac filed its complaint in state court, the federal action is not truly "reactive." We are not persuaded that Continental accurately characterizes the sequence of events, but even if we were, that would not affect our conclusion that the present suit is "reactive." Reactive litigation can occur in response to a claim an insurance carrier believes to be not subject to coverage even though the claimant has not yet filed his state court action: the insurer may anticipate that its insured intends to file a non-removable state court action, and rush to file a federal action before the insured does so. If, as Continental contends, it intended to file suit in federal court before Robsac filed its state court action, the reason it formed that intention was that it was aware of Robsac's claim and hoped to preempt any state court proceeding. Whether the federal declaratory judgment action regarding

---

5. In the present case, the lack of diversity is a result of the existence of Doe defendants. In other cases it will result from the presence of two or more named defendants, at least one of whom is a citizen of the same state as the plaintiff. At the time the present suit was brought, 28 U.S.C. § 1441(c) provided:

Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

Congress recently amended section 1441(c) by replacing "would be removable if sued upon alone" with "within the jurisdiction conferred by section 1331 of this title" and by replacing "remand all matters not otherwise within its original jurisdiction" with "may remand all matters in which State law predominates." *See* Judicial Improvements Act of 1990, Pub.L. No. 101–650, § 312, 104 Stat. 5089, 5114.

Continental concedes that under the old version of section 1441(c) the case could not have been removed, and does not contend that Robsac's state suit against Continental was removable as an "independent claim or cause of action." The amendment to 1441(c) does not appear to have any effect on the removability of the action.

It is also worth noting that at the time Continental brought its declaratory judgment action, our rule was that the presence of Doe defendants in the state court action precludes removal. *See Bryant v. Ford Motor Co.,* 844 F.2d 602, 605 (9th Cir.1987) (en banc). Subsequently, Congress amended 28 U.S.C. § 1332, so that the presence of defendants sued under fictitious names no longer defeats diversity jurisdiction. *See* Judicial Improvements and Access to Justice Act, Pub.L. No. 100–702, 102 Stat. 4642 (1988). We are unaware whether Robsac has learned the true names of the Doe defendants, although Continental has conceded that some of them are California residents. In any event, we proceed on the assumption—shared by both parties—that this case could not have been removed at the time Continental filed its declaratory judgment action or the time the district court denied the motion to stay and granted declaratory relief.

insurance coverage is filed first or second, it is reactive, and permitting it to go forward when there is a pending state court case presenting the identical issue would encourage forum shopping in violation of the second *Brillhart* principle.

The third *Brillhart* factor is the policy of avoidance of duplicative litigation. Here it is clear that that policy would be frustrated by permitting the federal action to go forward during the pendency of the state court action because the federal declaratory suit is virtually the mirror image of the state suit. All of the issues presented by the declaratory judgment action could be resolved by the state court.[6] Hence, permitting the present action to go forward would waste judicial resources in violation of the third *Brillhart* factor.

■ In addition to the three principal *Brillhart* factors discussed in *Chamberlain,* there are at least two others that require a decision not to exercise jurisdiction in the present case. First, there is the general policy of avoiding piecemeal litigation. *See Chamberlain,* 931 F.2d at 1368. Piecemeal litigation would result if the federal court were to determine Robsac's rights against Continental, but not against the individual defendants.

Second, allowing this action to proceed would violate the spirit, if not the letter, of the diversity removal provision. Congress decided to permit removal of a state court action to federal court on the basis of diversity of citizenship only where there is complete diversity. *See* 28 U.S.C. § 1441(b)

and (c). Congress could have authorized partial removal of such cases, but apparently determined that the costs due to duplicative and piecemeal litigation that would have resulted outweighed any benefits of such a scheme.[7] To permit the present declaratory judgment action to proceed while there are non-diverse defendants in the state suit who are not parties to the federal action would be to sanction partial removal in all but name. We give considerable weight to the Congressional policy of 28 U.S.C. § 1441(b), and we cannot approve Continental's attempt to circumvent that policy.[8]

We conclude that there are particularly strong reasons to apply the *Brillhart* "presumption that the entire suit should be heard in state court." *Chamberlain,* 931 F.2d at 1367. We now consider whether there are any factors favoring the exercise of federal jurisdiction that might rebut the presumption.

*Chamberlain* was a case in which we held that declaratory relief was appropriate notwithstanding the fact that there was a pending state court declaratory action involving the identical question. The reason we so held was that in *Chamberlain* the declaratory judgment action in the federal court was a counterclaim to a claim seeking monetary relief. Because the district court's jurisdiction over the claim for monetary relief was not discretionary, there was no way for the federal court to dismiss the entire action. If the district court dismissed the declaratory judgment counterclaim the result would have been piecemeal

---

6. Indeed, the state court can also resolve the additional claims involving the non-diverse defendants.

7. The recent amendments to Title 28 of the United States Code, discussed *supra* n. 4, do not undermine the conclusion that Congress has chosen not to allow partial removal of diversity cases, at least where all the defendants are known. Indeed, as the House Report on the most recent amendment to 28 U.S.C. § 1441 states, a rule prohibiting partial removal in diversity cases is justified because "the need to provide removal for diverse defendants is not great." H.R.Rep. No. 101–734, 101st Cong., 2d Sess. 23, *reprinted in* 1990 U.S.Code Cong. & Admin.News 6802, 6860, 6869.

8. The potential for avoidance of the policy against partial removal is by no means confined to insurance cases. A grant of declaratory relief in this case would set a precedent for the garden variety case in which A (a citizen of state 1) sues joint tortfeasors B (a citizen of state 1) and C (a citizen of state 2) on the basis of the law of state 1 in a court of state 1. Such a case is indisputably unremovable under 28 U.S.C. § 1441(b) and (c), in whole or in part. Yet under the theory advanced by Continental, C could bring a declaratory judgment action in federal court, seeking a declaration that it is not liable to A. Thus, the declaratory judgment action would be converted into a vehicle for defeating the Congressional policy against partial removal of diversity cases.

litigation: the federal court would have been left with the claim for monetary relief and the state court would have had to decide the declaratory relief claim. We held that the federal court's granting of declaratory relief was appropriate under those circumstances because only the federal court could resolve the entire coverage dispute. 931 F.2d at 1366–68. By contrast, in the present case, only the state court can adjudicate the entire dispute because of the non-diverse defendants. *Cf. Allstate,* 913 F.2d at 278–79 (state court "would be in a superior position to address the legal issues on which [the insurer] seeks a declaration of rights"). Hence, the circumstance which justified departure from the *Brillhart* presumption in *Chamberlain* is not present here. Nor are there any other circumstances that would warrant such a departure.[9] Thus, to paraphrase the court in *United States v. State of Washington,* we choose to rest our decision in this case on the proposition that issuance of the declaratory judgment with respect to the insurance coverage dispute is contrary to the exercise of sound judicial discretion. *See* 759 F.2d at 1357.

## CONCLUSION

We hold that the district court's exercise of jurisdiction in this case was contrary to the exercise of sound judicial discretion. Courts should generally decline to assert jurisdiction in insurance coverage and other declaratory relief actions presenting only issues of state law during the pendency of parallel proceedings in state court. There are no circumstances present in this case that warrant an exception to that rule.

Accordingly, the judgment of the court below is reversed. The district court is instructed to dismiss the case.

REVERSED AND REMANDED WITH INSTRUCTIONS TO DISMISS.

CYNTHIA HOLCOMB HALL, Circuit Judge, dissenting.

The effect of today's decision is to forever disable the district courts of this circuit from exercising their discretion to entertain declaratory judgment actions brought by insurers in cases already pending in state courts. That result is particularly unfortunate because it could have been avoided had the majority not been so anxious to take the initial determination of jurisdiction out of the hands of the district court where, in my view, it belongs. I would have remanded the case to the district court with instructions to reconsider the matter in light of *Chamberlain v. Allstate Co.,* 931 F.2d 1361 (9th Cir.1991). But the majority prefers to conduct that review itself. Because I disagree with that action, as well as with the analysis that is its product, I dissent.

This court reviews de novo a district court's decision to exercise its jurisdiction under the Declaratory Judgments Act, 28 U.S.C. § 2201 (1988) ("the Act"). *Chamberlain,* 931 F.2d at 1366. It follows, the majority concludes, that we have the option to review the district court's jurisdictional decision now or "remand and delay doing so until after another appeal is taken." Majority at 1370. (citing *Allstate Ins. Co. v. Mercier,* 913 F.2d 273, 277 (6th Cir.1990)). It chooses the latter course, assuming that if we remand this case, whatever action the district court takes will be appealed and we will thus "still ultimately be obligated to

---

**9.** It might be argued that where a district court improperly exercised jurisdiction to grant a declaratory judgment, but nonetheless reached a correct decision on the merits, it would, at least in some circumstances, be a waste of judicial resources for the court of appeals to vacate the judgment in order for a state court to duplicate the district court's efforts. Whatever the merits of such an argument, it would in any event fail here. In the first place, the case before us was decided on summary judgment and the expenditure of judicial resources was thus compara-

tively minimal. In the second, for reasons that do not warrant extensive discussion here, the district court's decision granting summary judgment was in error. There is a genuine issue of material fact with respect to the question whether Robsac assigned or waived all of its rights to the claim at issue here. While Continental also urges us to affirm the district court's summary judgment decision on the basis of a ground not considered below, in view of the fact that the district court should not have addressed the merits of this case at all, we decline to do so.

exercise our own discretion in considering the propriety of the district court's grant or denial of declaratory relief." Majority at 1370. This is a great victory for efficiency, but a defeat for the integrity of our federal court system.

We do not know why the district court chose to exercise its jurisdiction. If it considered the factors that *Chamberlain* derived from *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) for determining when district courts may properly exercise jurisdiction over suits brought under the Act, it developed no record of that consideration. This court, therefore, has no record upon which to rely in conducting its own evaluation of those factors. But that is of no concern to the majority. How ironic it is that at the same time it draws on the lessons of *Brillhart* to admonish the district court for interfering in the domain of the state courts, the majority ignores that decision's counsel on the proper function of appellate courts.

In *Brillhart*, the district court refused to take jurisdiction over a declaratory judgment action brought by a reinsurer who had been made a party to a state garnishment proceeding. The court of appeals overruled the district court, holding that dismissal of the suit was an abuse of its discretion. *Id.* at 492–94, 62 S.Ct. at 1174–75. The Supreme Court reversed and remanded to the district court with instructions to reconsider its decision in light of the principles the court articulated in its opinion. *Id.* at 498, 62 S.Ct. at 1177.

The Court remanded, rather than deciding itself whether jurisdiction was proper, because the record suggested that the district court had not considered the factors the Court concluded were essential to that determination. Specifically, the district court had not considered "whether, under applicable local law, the claims sought to be adjudicated by the respondent in this suit for declaratory judgment had either been foreclosed by Missouri law or could adequately be tested in the garnishment proceeding pending in the Missouri state court." *Id.* at 495–96, 62 S.Ct. at 1176. The Court made clear why the district

court, not the Supreme Court, should make that determination in the first instance.

If the lower courts had found that under Missouri law the respondent's claims could not adequately be tested in the pending garnishment proceeding, or that Missouri law on the subject was doubtful, and upon the basis of such a finding had taken jurisdiction of this suit for a declaratory judgment, we would not disturb such a finding. But no such finding can be extracted from this record. And it is not for us to attempt to pronounce . independently on Missouri law. To do so would be to disregard the limitations inherent in our appellate jurisdiction.

*Id.* at 496–97, 62 S.Ct. at 1176.

The circumstances of this case are no different from those of *Brillhart* and Justice Frankfurter's reasoning counsels as strongly in favor of remand here as it did there. The district court in this case apparently never considered the *Brillhart* factors and thus never developed a record evaluating them. Such a record is invaluable to our own de novo review of the court's exercise of jurisdiction. Indeed, the speculative nature of both the majority's and my own application of the *Brillhart* principles to this case demonstrates the hazards that befall appellate courts when they deceive themselves that they are better equipped to do the job of trial courts than are trial courts themselves. I would remand to the district court with instructions to reconsider the matter in light of *Chamberlain*.

Though I would not review the district court's jurisdictional determination without a proper foundation, the majority has chosen not to delay, and I therefore feel constrained to register my disagreements with its analysis. First, it is true, as the majority states, that when a federal declaratory judgment action is brought while a state court action is pending, there is a presumption that the entire matter should be heard in state court. Majority at 1370 (citing *Chamberlain*, 931 F.2d at 1366–67). *Chamberlain* goes on to make clear, however, that

[t]he pendency of a state court action ... does not of itself require a district court to refuse declaratory relief in federal court. In deciding whether to grant such relief in a particular case, the Supreme Court has counseled district courts to

> ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court will have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

A district court, therefore, when deciding whether to exercise its jurisdiction under the Declaratory Judgments Act, must balance concerns of judicial administration, comity, and fairness to the litigants.

*Chamberlain*, 931 F.2d at 1367 (quoting *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1176). At the time appellant filed his motion for a stay in this case, the federal proceeding had progressed further than the parallel state proceeding and either court could have afforded complete relief. If these circumstances have not changed, on remand the district court might well conclude, despite the presumption against jurisdiction when a parallel state proceeding has been commenced, that concerns of judicial administration and fairness to the litigants weigh in favor of retaining jurisdiction.

In addition to these general concerns, *Chamberlain* derives from *Brillhart* several specific factors the district court should consider in deciding whether to exercise its jurisdiction. I object to certain aspects of the majority's analysis of those factors. The first *Brillhart* factor identified in *Chamberlain* is the need "to avoid having federal courts needlessly determine issues of state law." *Chamberlain*, 931

F.2d at 1367. The majority is of the opinion that this factor counsels against jurisdiction because the same issue is at stake in the state proceeding, and California law provides the rule of decision. What the majority fails to note is that the first *Brillhart* factor is implicated only when complex state law issues are presented. *See id.* (citing *Brillhart*, 316 U.S. at 497, 62 S.Ct. at 1176).

There is no complex issue of state law presented in this case. Rather, the suit boils down to a factual dispute over whether, at the time the claim was filed, appellant had an ownership interest in the policy. The mere incantation of California's "complex scheme of insurance regulation" cannot change that fact, nor can it make the policies of *Burford* abstention relevant to the majority's analysis. *See Pinhas v. Summit Health, Ltd.,* 880 F.2d 1108, 1115 (9th Cir.1989) ("*Burford* abstention is appropriate when a federal court is presented with difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.") (citation and internal quotation omitted). Surely the majority does not mean to suggest that every breach of contract claim against an insurer requires a court to plumb the depths of some byzantine administrative apparatus. Because the district court was not called upon to decide unsettled questions of state law, I suggest that the first *Brillhart* factor has not been implicated.

Under the second *Brillhart* factor, the district court should consider "that parties could attempt to avoid state court proceedings by filing declaratory relief actions in federal court." *Chamberlain*, 931 F.2d at 1367. The majority relies on *Transamerica Occidental Life Ins. Co. v. Digregorio,* 811 F.2d 1249, 1254 n. 4 (9th Cir. 1987), to characterize this factor "as relating to 'the "defensive" or "reactive" nature of a federal declaratory judgment suit.'" Majority at 1371. It then suggests "that if a declaratory judgment suit is defensive or reactive, that would justify a district court's decision not to exercise jurisdiction." *Id.* While this position is not necessarily inconsistent with *Digregorio*, I am

troubled by the majority's attempt to translate the *Digregorio* analysis into a per se rule: "Whether the federal declaratory judgment action regarding insurance coverage is filed first or second, it is reactive, and permitting it to go forward when there is a pending state court case presenting the identical issue would encourage forum shopping in violation of the second *Brillhart* principle." *Id.* at 1363.

I do not believe *Digregorio* supports such a rule. The case never actually discusses "reactive" litigation. Indeed, its only reference to "reactive" litigation appears in a parenthetical reference to *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)—a case not involving the Declaratory Judgments Act—in a footnote that stands for nothing more than "the limited proposition that *Brillhart* survives *Colorado River* and authorizes jurisdictional discretion in Declaratory Judgment [sic] Act suits." 811 F.2d at 1254 n. 4.

All that *Digregorio* actually says about "forum shopping" is that "a district judge has discretion to decline jurisdiction in favor of pending state court litigation when a party seeks to use the Declaratory Judgment [sic] Act to deprive a plaintiff of his choice of forum or to encourage a race to judgment." 811 F.2d at 1253. This is consistent with *Chamberlain*'s statement of the second *Brillhart* factor as well as its suggestion that forum shopping should be avoided "by requiring district courts to inquire into the availability of state court proceedings to resolve all issues without federal intervention." 931 F.2d at 1367.

Appellee's declaratory action was arguably "defensive." That fact, however, is only one of several factors that a court must balance in determining whether to entertain an action for declaratory relief. It is not, as the majority suggests, dispositive.

Finally, the majority suggests that allowing the federal action to go forward would frustrate the third *Brillhart* factor: avoiding "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation." 316 U.S. at 495, 62 S.Ct. at 1176. Because no substantial progress had been made in the state court action, I do not believe this factor is implicated. Furthermore, I question whether the presence of "Doe Defendants" in the state action has any bearing on the third factor, the policy disfavoring piecemeal litigation, or the diversity removal provision of 28 U.S.C. § 1441(b), (c) (1988). I am at a complete loss as to how the presence of fictitious defendants in appellant's state court action prevents a federal court from granting complete relief to the actual parties.

In my opinion, these flaws in the majority's analysis substantially undermine its conclusion that it would be improper for the district court to exercise its discretion to take jurisdiction over appellee's declaratory judgment action. More importantly though, these flaws demonstrate exactly why it is imperative to allow district courts to exercise their discretion in the first instance. Had we allowed the district court to consider the jurisdictional question in light of *Chamberlain,* it would have established a record illuminating the applicability of the *Brillhart* principles to the facts of this case and enabled us to engage in an intelligent de novo review of its determination. Without a record, we are left to fumble in the dark for the correct decision.

Perhaps my greatest concern, however, is the practical consequence of the majority's analysis. The majority pays lip service to the discretion afforded district courts under *Chamberlain,* holding only that in this case "issuance of the declaratory judgment with respect to the insurance coverage dispute is *contrary to the exercise of sound judicial discretion.*" Majority at 1374. (emphasis added). But the reality is that the majority has established a per se rule against federal district courts taking jurisdiction over declaratory judgment actions brought by insurers. By invoking California's "complex scheme of insurance regulation" without regard to the facts of this case, by ignoring the relative postures of the state and federal proceedings in the case, and by making the "defensiveness" of

the declaratory judgment action dispositive, the majority leaves the district courts no room to exercise their discretion. Under its analysis, two of the three *Brillhart* factors will always counsel against jurisdiction, and the third will be dispositive in any case that can be deemed "defensive." There is no escaping the conclusion that in the future, district courts will feel bound by this decision and choose not to take jurisdiction over declaratory judgment actions by insurers.

I respectfully dissent.