**AMERICAN ECONOMY INSURANCE COMPANY, a foreign corporation,**
**Plaintiff,**

v.

**Ralph B. WILLIAMS, d/b/a Northwest Company, and Northwest Gas & Go, Inc., an Idaho corporation, Defendants.**

**Civ. No. 90–0505–N–HLR.**

United States District Court,
D. Idaho.

Oct. 30, 1992.

Michael E. Ramsden, Randall R. Adams, Quane Smith Howard & Hull, Coeur d'Alene, Idaho, William R. Hickman, Mary R. DeYoung, Reed McClure, Seattle, Wash., for plaintiff.

Steven C. Verby, Sandpoint, Idaho, Fred M. Gibler, Evans Keane Koontz Boyd Simko & Ripley, Kellogg, Idaho, for defendants.

## ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO STRIKE

RYAN, District Judge.

### I. FACTS AND PROCEDURE

The plaintiff, American Economy Insurance Co. ("American Economy"), filed this suit seeking a declaratory judgment that it has no duty to defend or indemnify the defendants, Ralph B. Williams, d/b/a Northwest Company, and Northwest Gas & Go, Inc. (collectively "Williams"), and that the defendants are not covered under any of the insurance policies executed between them with respect to a petroleum spill from the defendants' property into Sand Creek near Sandpoint, Idaho.

Currently before the court is American Economy's Motion To Strike Defendants' Jury Demands, filed on March 13, 1992. Also before the court is Williams' Motion to Dismiss or Stay, filed on April 21, 1992.

These motions have been fully briefed and are now ripe for decision. Because it is a potentially dispositive motion, the court will first address the Motion to Dismiss or Stay. In addition, the court has reviewed both motions and determined that oral argument would not benefit the court.[1]

### II. BACKGROUND

Briefly, the background of this case is as follows. Defendant Williams owns a parcel of land next to Sand Creek in Sandpoint, Idaho. He purchased the land in 1968, and has operated a gas station and convenience store on the land since that time. In 1978, additional petroleum storage tanks and connecting pipes were installed on the land. These tanks and pipes were pressure tested for leaks when they were installed. At that time, no leaks were found. Williams now claims that he did not notice any petroleum leaks on or adjacent to his property between 1978 and 1989. This fact is disputed by American Economy because of testimony given by Williams in his deposition. In his deposition, Williams stated that he noticed leaks and that there were discrepancies in his petroleum inventory in the period between 1978 and 1989.

In May of 1989, the State of Idaho's Division of Environmental Quality ("DEQ") discovered petroleum on the bank and in the water of Sand Creek near Williams' property. The DEQ determined that the petroleum might be originating from Williams' property and/or the property of one of Williams' neighbors. DEQ hired a consulting firm by the name of Chen–Northern, Inc., to investigate the spill.

The investigation by Chen–Northern and the independent efforts of Williams revealed that the petroleum found in Sand Creek was coming, at least in part, from a cracked union in a fuel transfer line connecting certain underground storage tanks on Williams' property. It is not clear how much of the spill in Sand Creek came from Williams' property. It has been estimated that the leak on Williams' property caused from 5 to 12 gallons per hour of petroleum

---

**1.** In the hearing held on March 23, 1992, the court advised the parties that the Motion to Dismiss or Stay would be decided on the briefs without oral argument.

to escape each time the line was pressurized during transfers of petroleum.

The fuel transfer line was installed in 1978. The crack occurred sometime between 1978 and 1989 when the spill in Sand Creek was discovered. Yet, as noted above, there is some evidence that spills had been noticed earlier than 1989. American Economy admits that it is not clear when the leak on Williams' property began. American Economy also admits that the cause of the leak is in dispute.

Williams dug up the pipeline in June of 1989, and repairs were made to correct the problem. Apparently Williams disposed of the pipe and the union before inspecting it for cracks or fractures. Williams has now hired a geotechnical engineer who speculates that the cause of the leak was a combination of corrosion and heavy truck traffic on the road above the line.

In May of 1990, the DEQ advised Williams that it considered him to be a responsible party for the spill. The DEQ then asked Williams to sign a consent order stating that he would agree to accept responsibility and undertake cleanup efforts. Williams refused to sign the consent order.

Williams claims that in the summer of 1989 he notified his insurance agent, Jim Clouse, regarding the state's investigation of the spill. After the state notified Williams that it considered him to be a responsible party, Williams in turn notified American Economy in writing sometime in May of 1990 of the investigation and potential action against him. American Economy denies that it ever received notice of the potential action at the time Williams claims to have met with Jim Clouse in the summer of 1989. In December of 1990, American Economy filed this action seeking a declaratory judgment.

On May 15, 1991, the State of Idaho filed suit against Williams and his company—Northwest Gas and Go, Inc. (Williams incorporated his business in December of 1989)—and another, unrelated property owner. The suit involves Idaho statutory claims, as well as a claim for common law nuisance. The state alleges that the groundwater and soil below Williams' property and adjacent properties have been contaminated by petroleum products emanating from Williams' property. The state seeks an order compelling Williams to pay civil penalties, costs and expenses, attorney's fees, and a permanent mandatory injunction requiring Williams to clean up the contamination or, alternatively, damages equal to the cost of the cleanup. American Economy has been defending Williams in the state suit, under a reservation of rights.

## III. ANALYSIS

### A. *Motion to Dismiss or Stay*

█ In resolving the present Motion to Dismiss or Stay, it is important to note that in December of 1991, American Economy and Williams filed cross-motions for summary judgment. On February 28, 1992, the court denied both motions for summary judgment on the grounds that there are numerous genuine issues of material fact which must be resolved before the questions of law relating to coverage under the insurance policies can be addressed.

The order denying summary judgment set forth the following disputed questions of fact:[2]

1. *When did the leak begin?* This issue is especially important because it bears on which of the many insurance policies will govern the rights of the parties.

2. *What caused the leak?* This is another key issue because the various policies cover only certain types of events—i.e. "Specified Causes of Loss."

3. *When was the leak discovered?* There is conflicting evidence as to when Williams knew about the leak. If Williams knew about the leak for quite some time, this could have a significant impact on whether or not he is covered under any of the policies.

2. In addition to the issues set forth below, the court identified several other less significant issues of fact.

4. *Was the leak "sudden and accidental"?* The policies specify that only occurrences which are "sudden and accidental" are covered.

5. *What effect do the various exclusionary clauses in the policies have?* This important question of law cannot be answered without a complete development of the facts in this case. If it turns out that the facts are as American Economy says they are, then the exclusions may work in its favor, and vice versa.

6. *What is the extent and nature of Williams' "damages"?* The policies only cover certain types of damages. At this point, it is impossible to assess the extent of the spill, the degree to which Williams is responsible, and what types of penalties and damages the State of Idaho might win against Williams.

7. *From whose property did the petroleum originate?* At this point, it is still not clear if all of the petroleum in Sand Creek came from Williams' property, or if some came from the neighboring property. Page 44 of the report compiled by the state's consulting firm, Chen–Northern, states that the contamination may have come from at least two sources, and that *additional data is necessary* to evaluate the possible sources.

8. *When was American Economy notified of the potential action against Williams?* This is another key issue because it may determine if Williams met the time requirements for notification set forth in the various policies. Williams maintains that he gave notice in June of 1989, while American Economy argues that notice was not received until May of 1990.

9. *When Williams met with Jim Clouse in June of 1989, was Clouse acting as the agent of American Economy, or as Williams' own agent?* This question goes to the notification issue and, again, cannot be determined based on the facts presented to the court.

10. *Was there an "occurrence" as defined in the policies?* This is a factual question which has a significant impact on the question of coverage. American Economy first argued in its own Motion for Summary Judgment that it is undisputed that there was no "occurrence." Yet, in its brief in opposition to Williams' Motion for Summary Judgment, American Economy expressly stated that this is an important issue of fact which *cannot* be resolved on summary judgment.

11. *Should the "Owned Property" exclusion apply?* This is a particular exclusion which American Economy asserts cannot be determined to apply or not without additional facts.

The issues of fact listed above are material because of the significant impact each will have on the questions surrounding whether or not Williams is covered under any of the policies issued by American Economy from 1984 through 1990.

In his Motion to Dismiss or Stay, Williams argues that this declaratory judgment action should be either dismissed or stayed pending resolution of the underlying state action against Williams. This motion is made on the grounds that most, if not all, of the issues set forth above will be or could be addressed by the state court. Therefore, if this court continues with the present action it will result in a needless waste of judicial resources, potentially conflicting judicial determinations, piecemeal litigation, and the unnecessary and prejudicial duplication of effort and expense on the part of Williams.

American Economy argues that the state court will not address many of the issues regarding coverage under the insurance policies. It further contends that it has a right to have its duties to defend and/or indemnify resolved even though the state court action against Williams has not concluded.

The court has carefully reviewed the memoranda, exhibits, and affidavits submitted by the parties in relation to the present motion, as well as the complaint filed by the State of Idaho against Williams.[3] The court has also reviewed the

---

3. The complaint in state court against Williams

and the other defendant, Allen Cox, alleges

cases cited by the parties in their memoranda. Based upon this review, the court finds that the motion to dismiss should be granted.[4]

As noted above, when the Motions for Summary Judgment were addressed, the court was struck by the number of key factual issues which must be resolved before the questions relating to insurance coverage can be decided. These identical factual issues will have to be addressed in the action against Williams in state court. Thus, it is clear that for this court to entertain this declaratory judgment action any further, it would have to preside over a lengthy trial dedicated primarily to resolving the same factual issues which will be adjudicated in state court. Therefore, the court will exercise its discretion and order this case dismissed without prejudice.

■ The court has discretion in deciding whether or not to entertain declaratory judgment actions, based upon considerations of judicial economy, comity, and fairness to litigants.[5] In *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), the United States Supreme Court has described the Declaratory Judgment Act, 28 U.S.C. § 2201[6] as "an enabling Act, which confers a *discretion* on the courts *rather than an absolute right* upon the litigant." *Id.* at 241, 73 S.Ct. at 239 (emphasis added). In *Public Affairs Associates, Inc. v. Rick-*

*over*, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962), the Supreme Court declared that:

> The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; *it did not impose a duty to do so....* Of course a District Court cannot decline to entertain such an action as a matter of whim or personal disinclination. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest."

*Id.* at 112, 82 S.Ct. at 582 (citations omitted) (emphasis added).

In *Brillhart v. Excess Insurance Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), the Supreme Court described judicial abstention in the context of declaratory judgment actions.

> Although the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act, it was under no compulsion to exercise that jurisdiction. The petitioner's motion to dismiss the bill was addressed to the discretion of the court.... The motion rested upon the claim that, since another proceeding was pending in a state court in which all the matters in controversy between the parties could be fully adjudicated, a declaratory judgment in the federal court

---

three causes of action: (1) violation of Water Quality Standards and Wastewater Treatment Requirements (Water Quality Standards) by the discharge of petroleum products into the soil, groundwater, and Sand Creek, which, if proven, entitles the state to civil penalties, costs and expenses, and a mandatory injunction on Williams and/or Cox to clean up the spill site; (2) violation of Water Quality Standards by refusing to stop the discharge and clean up the spill site, which entitles the state to the same relief set forth above; and (3) a common law claim for nuisance.

Under all of these claims, the state must prove the cause and extent of the discharge, as well as the party or parties responsible for the discharge. In addition, a variety of other facts will have to be proven which are critical to the issues surrounding the rights and obligations of Williams and American Economy under the various insurance policies executed between them.

4. The court has also reviewed the authorities cited by the parties with respect to whether or not this action should be stayed pending resolution of the state action. The court finds that it would also be appropriate for the court to stay this action. However, because the court has decided to dismiss the action, the question of whether or not it should be stayed is moot.

5. See *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir.1991).

6. Title 28 U.S.C. § 2201 is discretionary by its very terms: "[A]ny court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration...." 28 U.S.C.S. § 2201 (Law.Co-op.1977 & Supp.1992) (emphasis added).

was unwarranted. The correctness of this claim was certainly relevant in determining whether the District Court should assume jurisdiction and proceed to determine the rights of the parties. *Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.*

Where a District Court is presented with a claim such as was made here, it should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

*Id.* at 494–95, 62 S.Ct. at 1176 (citations omitted) (emphasis added).[7]

The court has reviewed a number of decisions relating to the question of whether a federal district court should entertain a declaratory judgment action brought by an insurance company, while there is a related dispute between its insured and a third party, or its insured and the insurance company, in state court. In *Allstate Insurance Co. v. Mercier*, 913 F.2d 273 (6th Cir.1990), Allstate brought a declaratory judgment action to determine whether it was obligated to defend and/or indemnify its insureds under a homeowner's policy in an action against the insureds in state court. The underlying action against the insureds was a tort action stemming from

their allegedly providing alcoholic beverages to a person under age 21, who then caused a fatal car accident. Without developing a complete factual account of the underlying action, the district court granted summary judgment in favor of Allstate on the basis of an exclusion in the policy, and the insureds appealed.

On appeal, the Sixth Circuit held that the district court should not have exercised its discretionary jurisdiction over the declaratory judgment action. The court's ruling was based on the fact that the legal issues surrounding the question of coverage could not be decided until certain factual issues were resolved. *Id.* at 278. The court noted that the necessary facts would be developed at the trial of the underlying tort action in state court. *Id.* The court then declared that Allstate should have filed a separate declaratory judgment action in the state court, so that the same court could address both the factual issues of the underlying dispute, as well as the legal issues relating to coverage. *Id.* at 278–79.

It is true that in the present case the federal declaratory judgment action does not "parallel[ ] a state court action arising from the same facts" in the sense that different legal issues are presented by the pleadings. *Nevertheless, the federal action does parallel the state action in the sense that the ultimate legal determination in each depends upon the same facts.* And, there is an alternate state remedy by which the legal determination sought in the federal declaratory judgment action may be made on the basis of a well-developed factual record, rather than on the basis of a barren record.

*Id.* at 279 (emphasis added). The court then remanded the case back to district court with directions to dismiss the action. *Id.* The same circumstances are present in the case at hand. None of the key legal issues can be decided until a full factual record is developed, and the disputed questions of fact are resolved. American Econ-

---

7. The continuing validity of *Brillhart v. Excess Insurance Co.* in this context is still recognized today. *See Transamerica Occidental Life Ins.* *Co. v. Digregorio,* 811 F.2d 1249, 1254 n. 4 (9th Cir.1987).

omy's proper course of action is to file a separate action for declaratory relief in the state court presiding over the dispute between Williams and the State of Idaho. Such an action is expressly authorized by Idaho statute.

**Declaratory judgments authorized— Form and effect.**—Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

Idaho Code § 10–1201 (1990).

The court also finds the decision and rationale in *American Home Assurance Co. v. Evans,* 791 F.2d 61 (6th Cir.1986), to be persuasive. In that case, an insured was sued in state court and shortly before trial his insurance company filed a declaratory judgment action in federal court, seeking an order that the insured's actions were not covered by the insurance policy. Thereafter, the state court action went to trial and produced a judgment against the insured. Then the federal district court entered a declaratory judgment that the insurance company was only obligated to indemnify the insured for part of the judgment.

The Sixth Circuit Court of Appeals reversed the district court and remanded the case back to be dismissed, holding that it was improper for the court to enter a declaratory judgment. The court declared that:

Because of the multiple complex disputed factual issues in the case ... we think it unlikely that declaratory judgment would serve a useful purpose in clarifying the legal issues involved. And because the ordinary procedure for determining such questions is an action in indemnity for recovery of the policy proceeds ... it appears likely that this action is, if not "procedural fencing," certainly part of a race for *res judicata.* The availability of a traditional indemnity action as a more appropriate means of enforcement also argues against the grant of declaratory judgment in this case. Moreover, the only basis of jurisdiction here is diversity jurisdiction. *We question the need for federal courts to issue declaratory judgments in such cases where a state court has already accepted jurisdiction over the subject matter of the lawsuit. We also question the need for such declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner.*

*Id.* at 63 (footnote omitted) (emphasis added).

In *Ticor Title Insurance Co. v. American Resources, Ltd.,* 859 F.2d 772 (9th Cir.1988), the Ninth Circuit Court of Appeals stated that where the underlying state action has not yet determined whether and to what extent the insured is liable to the third party, there is no actual controversy concerning the insurance company's duty to indemnify the insured. *Id.* at 777 n. 7. The court noted that "[i]n such instances, courts normally dismiss declaratory judgment actions, especially where the federal relief sought may hinge upon the outcome of state court actions." *Id.* (citations omitted).[8]

In *Continental Casualty Co. v. Robsac Industries,* 947 F.2d 1367 (9th Cir.1991), the Ninth Circuit addressed in detail the issues surrounding the exercise of discretionary jurisdiction over declaratory judgment actions brought by insurance companies while a parallel or related state court action is pending. The court first noted the use of abstention in this context as enunciated by the Supreme Court in *Brill-*

---

**8.** The Ninth Circuit affirmed this position in *Continental Casualty Co. v. Robsac Industries,* 947 F.2d 1367 (9th Cir.1991). "[W]e have stated that the ripeness requirement of Article III's 'case or controversy' clause precludes the insurer's obtaining a declaratory judgment with respect to its *liability* to the insured in such cases...." *Id.* at 1371.

*hart v. Excess Ins. Co.,* 316 U.S. at 495, 62 S.Ct. at 1176.[9]

The court then set forth three considerations which a district court must look to in deciding whether to entertain a declaratory judgment action. The district court should (1) avoid needlessly determining issues of state law; (2) discourage litigants from filing declaratory judgment actions as a means of forum shopping; and (3) avoid duplicative litigation. *Continental Cas. Co. v. Robsac Indus.,* 947 F.2d at 1371.

The Ninth Circuit went on to state that the district court should be mindful of the fact that Congress expressly left insurance law to the states through the McCarran–Ferguson Act.[10] *Id.* at 1371. The court then declared that when a declaratory judgment action seeking an interpretation of insurance law is filed in federal court, based solely on diversity jurisdiction, the federal interest in assuming jurisdiction over such an action "is at its nadir." *Id.* Under such circumstances, the "policy of avoiding unnecessary declarations of state law is especially strong...." *Id.*

In conclusion, after carefully considering all of the factors outlined above, the court finds that this action should be dismissed in light of the underlying state action between Williams and the State of Idaho. If this action is allowed to proceed further, it will result in (1) inefficient and duplicative use of scarce judicial resources; (2) piecemeal litigation; (3) unnecessary interference with state proceedings and unnecessary declarations of state law; (4) potentially conflicting judicial pronouncements; and (5) unfair prejudice to Williams, in that he would have to litigate most of the same issues in both actions.

The court further finds that American Economy has an adequate state remedy. It may file a separate action for declaratory relief in the state court presiding over the other suit. In addition, after hearing a full account of the facts surrounding this dispute, the state court will be in a far superior position to resolve the important legal issues relating to coverage, which will turn on the proper application of Idaho insurance law to those facts.

### B. *Motion to Strike Jury Demands*

In light of the fact that the court has determined that this action should be dismissed, American Economy's Motion to Strike Defendants' Jury Demands will be denied as moot.

### IV. ORDER

Based on the foregoing, and the court being fully advised in the premises,

IT IS HEREBY ORDERED that the defendants' Motion to Dismiss or Stay, filed April 21, 1992, should be, and is hereby GRANTED in part and DENIED in part. With respect to the request that this action be dismissed, the motion is granted, and this action is hereby dismissed without prejudice. With respect to the request that this action be stayed, the motion is denied as being moot.

IT IS FURTHER ORDERED that the Motion To Strike Defendants' Jury Demands, filed March 13, 1992, should be, and is hereby DENIED as being moot.

---

**9.** "[A] district court's discretion to grant relief under the Declaratory Judgments Act ordinarily should not be exercised 'where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Continental Cas. Co. v. Robsac Indust.,* 947 F.2d at 1370 (citation omitted).

**10.** 15 U.S.C. §§ 1011–12 (1988).